# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| **RONALD HOLASSIE,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )　　　　Civil Action No. 16-cv-2053 (TSC) |
| | ) |
| **DISTRICT OF COLUMBIA,** | ) |
| | ) |
| Defendant. | ) |
| | ) |

## MEMORANDUM OPINION

Plaintiff Ronald Holassie, a former lifeguard with the District of Columbia Department of Parks and Recreation ("DPR"), brings this suit against the District of Columbia for engaging in discriminatory and retaliatory conduct in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et seq.* ("Title VII") and the D.C. Human Rights Act, as amended, D.C. Code §§ 2-1401.01 *et seq.* ("DCHRA") (Count I), retaliation in violation of the D.C. Whistleblower Protection Act ("DCWPA"), D.C. Code §§ 1-615.51 *et seq.* (Count II), and unlawful invasion of privacy (Count III).

The District of Columbia ("the District") moves, pursuant to Federal Rule of Civil Procedure 56, for summary judgment. (ECF No. 42.) For the reasons set forth below, the court will GRANT the motion, in part, and DENY the motion, in part.

## I. BACKGROUND

In May of 2006, Carmen Jean-Baptiste, Holassie's mother, began working as a lifeguard at DPR's Takoma Aquatic Center. *Byrd v. District of Columbia*, 807 F. Supp. 2d 37, 52 (D.D.C. 2011). In 2007, Jean-Baptiste sued the District of Columbia, claiming that, during the course of her employment, she experienced sexual harassment, a hostile work environment, and eventually

a wrongful and retaliatory termination. *Carmen Jean-Baptiste v. District of Columbia*, 11-cv-1587-RCL, ECF No. 51. In 2012, a jury awarded Jean-Baptiste $3.5 million and returned an addendum recommending that DPR "begin an EEO training program for all DPR managers," revise its policies regarding the handling of complaints, and conduct an internal audit of compliance with DPR policies. *Id.* ECF No. 185. Jean-Baptiste settled her lawsuit for a confidential amount and the matter was dismissed in January 2014. *Id.* ECF Nos. 254–55.

## A. **Holassie's Employment with DPR**

Holassie began his employment with DPR as a summer lifeguard at Wilson Aquatic Center in 2012. (ECF No. 44-15 ("Pl.'s Resp. to Interrog. No. 5") at 7.) He then worked at Takoma Aquatic Center as a summer lifeguard in 2013 and 2014. (*Id.*) According to Holassie, from 2012 to 2014, he had no negative interactions with supervisors or co-workers, negative performance reviews, or mediation meetings with management. (*Id.* at 7–8.)

Holassie alleges that, in summer 2015, DPR caused him to work in a hostile work environment in retaliation for his mother's protected activity. (ECF No. 44-1 ("Pl.'s Resp. 7(h)(1) Statement") at ¶¶ 1–3.) In support of his claims, Holassie proffers the following events:

- On June 9, 2015, Holassie was selected at random for a performance audit by a third-party auditor hired by DPR to perform surprise audits. (*Id.* at ¶¶ 13–15.) It is undisputed that all lifeguards were subjected to performance audits; and that the videotape of Holassie was viewed only by the auditor and DPR's aquatic leadership team. (*Id.* at ¶¶ 14, 21.)

- On July 10, 2015, Holassie, his brother, and another lifeguard were involved in a "physical skirmish," during which Holassie tipped over a trash can and used

profanity.  (*Id.* at ¶¶ 5–6.)  On July 14, 2015, Holassie's supervisor, Robert Allen, scheduled a meeting with Holassie to discuss the incident.  (*Id.* at ¶ 7.)

- On July 21, 2015, Holassie had a meeting with his supervisor regarding his leaving his assigned zone to find his whistle.  (*Id.* at ¶¶ 8–9.)  The parties dispute whether Holassie secured coverage before he left his post.  (*Id.* at ¶¶ 9–10.)

- On July 28, 2015, according to DPR, Holassie failed to adhere to the schedule.  (*Id.* at ¶ 12.)  Holassie maintains that he was on time for his assigned shift.  (*Id.*)  On August 3, 2015, an employee conference was held to discuss the matter.  (*Id.* at ¶¶ 11–12.)

Holassie claims that at various points during the summer, he felt uncomfortable on the evening shift and asked Allen to switch him to the morning shift.  (*Id.* at ¶ 13; ECF No. 42-4 ("Pl.'s Resp. to Interrog. No. 4") at 5.)  Allen denied his requests.  (*Id.*)

On August 3, 2015, Holassie told Allen that he felt targeted by other employees.  (Pl.'s Resp. to Interrog. No. 5 at 9.)  Allen then emailed Tyrell Morris, DPR's Director of Aquatics, stating: "Ronald Holassie has expressed to me that he feels as if he has been targeted by other employees and is being harassed.  What would be the official DPR procedure course of action to take?"  (ECF No. 44-7 ("Allen/Morris E-mail") at 2.)  On August 4, 2015, Morris responded, informing Allen that he would be meeting with Holassie later that day; Allen memorialized the substance of Holassie's incidents and meetings in an email to Morris and DPR's Aquatic Operations Manager.  (*Id.*; Pl.'s Resp. 7(h)(1) Statement at ¶ 4.)  At some point that day, Holassie rescheduled his meeting with Morris to the following day, August 5, 2015.  (Pl.'s Resp. to Interrog. No. 5 at 10.)

The morning of August 5, 2015, Holassie filed an EEOC complaint against DPR. (*Id.*) He then met with Morris and other DPR management employees that afternoon. (*Id.*) According to Holassie, at the meeting he explained that he had been "taunted and treated with unwarranted hostility by his supervisors and staff." (*Id.*) Morris then read Allen's list of Holassie's alleged incidents and complaints and stated that, effective immediately, Holassie would be transferred to the Rumsey Aquatic Center. (*Id.* at 10–11.) Holassie agreed to the transfer and began working at the new location the following day. (*Id.* at 11.)

**B. Holassie's 2015 Termination**

On August 17, 2015, Holassie learned that his last day at DPR would be August 23, 2015. (ECF No. 44-16 ("Pl.'s Resp. to Interrog. No. 6") at 15.) He e-mailed Morris to confirm, and Morris responded: "It is my understanding that this is the date you provided to staff as you were leaving to go back to school." (ECF No. 44-10 ("Morris/Holassie E-mail") at 2–3.) The parties dispute whether the August 23, 2015 end date was expected. (Pl.'s Resp. 7(h)(1) Statement at ¶¶ 16–17.)

In support of its position that Holassie's employment was always contemplated to end in August, the District relies on the following facts: (1) DPR's personnel action form indicated that Holassie's last day would not be later than August 29, 2015 (ECF No. 42-9 ("Notification of Personnel Action")); (2) DPR's decision-to-hire form, signed in December 2014, indicated that Holassie asked to end his employment by "mid-August" (ECF No. 42-10 ("Summer 2015 Decision Action Form")); and (3) Holassie planned to return to school in Florida in August and travelled to Florida at the end of August to check on his financial aid status (ECF No 42-6 ("Holassie Dep. I") at 69:1–70:5).

In support of his position that his employment was not expected to conclude in August, Holassie points to his testimony that his return to college depended on his ability to receive financial aid.  (ECF No. 44-19 ("Holassie Dep. II") at 11:17–12:5, 36:5–9.)  He also testified that in prior years he had been told he was eligible for an extension past August.[1]  (*Id.* at 102:18–20, 103:10–104:15.)

## C.  Holassie's 2016 Application

On April 24, 2016, Holassie applied to work as a summer 2016 DPR lifeguard.  (ECF No. 44-13 ("2016 Holassie Application").)  Holassie did not receive an offer and he never returned to work for DPR.  (Pl.'s Resp. to Interrog. No. 6 at 15.)

The District claims Holassie was not hired because: (1) a current lifeguard certification is a mandatory prerequisite for lifeguard employment and Holassie's certification expired in January 2016, (*see* Pl.'s Resp. 7(h)(1) Statement at ¶¶ 18–19); and (2) DPR had already filled all the summer 2016 lifeguard positions, (*see id.* at ¶ 20).

Holassie disputes the District's proffered reasons.  With respect to the certification, he relies on: (1) Morris' testimony that certification was not a prerequisite for scheduling an interview, (ECF No. 44-22 ("Morris Dep. I") at 42:8–12; 43:13–18, 49:14–25), and (2) his own testimony that in past years he enrolled in the recertification course after HR notified him that he had been selected, (Holassie Dep. II at 82:21–83:20).  With respect to the availability of summer

---

[1] Holassie also claims that extensions were common so long as the lifeguard was in good standing; however, his record cites do not support this statement.  James Washington, Acting Aquatics Program Manager, testified that between 2012 and 2016 seasonal lifeguards were, at times, asked to work beyond Labor Day.  (*See* ECF No. 44-17 ("Washington Dep.") at 24:20–25:7, 27:23–28:6.)  Morris testified that summer lifeguards are sometimes offered extensions if there are "vacancies in career service," openings with indoor pools, or if the mayor extends pool season.  (*See* ECF No. 44-2 ("Morris Dep. I") at 103:11–25.)  Because Holassie's record cites do not support his statement, the court does not consider the statement on summary judgment.

2016 lifeguard positions, Holassie points to Morris' testimony that by March 2016 he had "nearly sufficient guards," but that he could not "speak with any confidence" about where he was in the hiring process in April 2016.  (Morris Dep. I at 45:14-21, 47:18-48:10.)

## II. LEGAL STANDARD

### A.  Summary Judgment

Summary judgment is appropriate where there is no disputed genuine issue of material fact, and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  A dispute is "genuine" only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A fact is "material" only if it is capable of affecting the outcome of the litigation.  *Id.*  In determining whether a genuine issue of material fact exists, the court must view all facts in the light most favorable to the nonmoving party.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  At the summary judgment stage, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge."  *Anderson*, 477 U.S. at 255.

The moving party bears the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits . . .' which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex Corp.*, 477 U.S. at 323 (quoting Fed. R. Civ. P. 56(c)).

The non-moving party's opposition, however, must consist of more than mere unsupported allegations or denials, and must be supported by affidavits, declarations, or other competent evidence, setting forth specific facts showing that there is a genuine issue for trial.

*See* Fed. R. Civ. P. 56(e); *Celotex Corp*, 477 U.S. at 324. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249–50 (citations omitted).

## III. ANALYSIS[2]

### A. Title VII and DCHRA Retaliation Claims

"[I]t is well-established that the DCHRA and Title VII employment discrimination actions are evaluated under the same legal standard." *Byrd*, 807 F. Supp. 2d at 57–58. Title VII prohibits an employer from discriminating against its employees in hiring decisions, compensation, terms, conditions, or privileges of employment on the basis of an individual's sex or because an individual "opposed any practice" made unlawful by Title VII or "made a charge, testified, assisted, or participated in" a Title VII proceeding or investigation. 42 U.S.C. § 2000e–3(a). DCHRA also prohibits discriminatory practices by employers based upon retaliation. D.C. Code § 2-1402.61.

"Where a plaintiff attempts to prove unlawful retaliation in violation of Title VII using circumstantial evidence of motive, the burden-shifting framework of *McDonnell Douglas* ordinarily applies." *Burton v. Donovan*, 210 F. Supp. 3d 203, 212 (D.D.C. 2016). Under this

---

[2] Holassie's Complaint alleges: (1) violations of Title VII and DCHRA; (2) violations of the DCWPA; (3) and an unlawful invasion of privacy. The District moves for summary judgment as to all claims. Holassie opposes summary judgment only on the Title VII, DCHRA, and DCWPA claims, and does not address his unlawful invasion of privacy claim. Therefore, the court treats the District's argument as to the invasion of privacy claim as conceded. *See Hopkins v. Women's Div., General Bd. of Glob. Ministries*, 284 F. Supp. 2d 15, 25 (D.D.C. 2003) ("It is well understood in this Circuit that when a plaintiff files an opposition to a dispositive motion and addresses only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded." (citing *FDIC v. Bender*, 127 F.3d 58, 67–68 (D.C. Cir. 1997)); *see also Hajjar–Nejad v. George Washington Univ.*, 37 F. Supp. 3d 90, 128 (D.D.C. 2014) ("[A] Plaintiff is not entitled to rely on the allegations in h[er] Complaint to create a genuine issue of material fact at the summary judgment stage.").

framework, the plaintiff has the initial burden of proving a prima facie case of discrimination. *Young v. United Parcel Serv., Inc.*, 135 S. Ct. 1338, 1345 (2015). If the plaintiff establishes a prima facie case, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for its actions. *Id.* If the employer proffers such a reason, the burden shifts back to the plaintiff to prove that the legitimate reason provided by the employer was in fact pretext for discrimination. *Id.* This burden is one of production, not persuasion; it "can involve no credibility assessment." *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 509 (1993).

However, at the summary judgment stage, where the defendant provides a legitimate, nondiscriminatory explanation for its actions, "the district court need not—*and should not*—decide whether the plaintiff actually made out a prima facie case under *McDonnell Douglas*." *Brady v. Office of Sergeant at Arms*, 520 F.3d 490, 494 (D.C. Cir. 2008) (emphasis in original). Rather, at that point the court "must resolve one central question: Has the employee produced sufficient evidence for a reasonable jury to find that the employer's asserted non-discriminatory reason was not the actual reason and that the employer intentionally discriminated against the employee on the basis of race, color, religion, sex, or national origin?" *Id.*

The D.C. Circuit recently clarified that *Brady*'s focus on the third prong of the *McDonnell Douglas* analysis is merely a "shortcut" and does not "imply that the District Court may relieve the employer of its burden, at the second prong, to articulate a legitimate, nondiscriminatory reason for its action." *Figueroa v. Pompeo*, 923 F.3d 1078, 1087 (D.C. Cir. 2019) (internal citations and quotation marks omitted). *Figueroa* clarified four factors that determine the adequacy of an employer's evidentiary proffer in most cases: (1) "the employer must produce evidence that a factfinder may consider at trial (or a summary judgment proceeding)"; (2) if the factfinder believes the evidence, it "must reasonably be able to find that

the employer's action was motivated by a nondiscriminatory reason"; (3) the "nondiscriminatory explanation must be . . . facially credible in light of the proffered evidence"; and (4) the evidence must present "a clear and reasonably specific explanation" such that the employee has "a full and fair opportunity to attack the explanation as pretextual." *Id.* (internal citation and quotation marks omitted). Therefore, under the second step of the *McDonnell Douglas* analysis, the court will first analyze whether the District proffered legitimate, nondiscriminatory reasons for terminating Holassie, failing to offer Holassie an extension, and failing to re-hire him, in accordance with the *Figueroa* factors.

1. DPR's Termination of Holassie on August 23, 2015 and Failure to Offer an Extension

   a. *The District Provided Legitimate, Nondiscriminatory Reasons for Terminating Holassie on August 23, 2015.*

The District has adduced evidence that Holassie was terminated and not offered an extension in August 2015 because in December 2014, when he was hired, Holassie stated that he needed to leave before Labor Day Weekend and requested a mid-August end date. (*See* Summer 2015 Decision Action Form.) The District also points to a May 29, 2015 personnel action form stating that Holassie's appointment was "not to exceed 8/29/2015." (*See* Notification of Personnel Action.) Applying the four *Figueroa* factors, the court finds that the District has proffered legitimate, non-discriminatory reasons for terminating Holassie and not offering him an extension, and therefore has met its burden under the second prong of *McDonnell Douglas*. *See Figueroa*, 923 F.3d at 1087.

First, because Holassie does not contest or object to the admissibility of any evidence proffered by the District, the court may consider the evidence here. *Id.*; *cf. Ali v. D.C. Gov't*, 810 F. Supp. 2d 78, 83 (D.D.C. 2011) ("Rule 56 allows a party . . . opposing summary judgment to

object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." (citing Fed. R. Civ. P. 56(c)(2)) (internal quotation marks omitted).

Second, the District presented evidence that would allow a jury to reasonably conclude that it had legitimate reasons—independent of retaliation—to terminate Holassie's employment and not offer him an extension. *See Figueroa*, 923 F.3d at 1087. It produced evidence that months before Holassie began working at DPR as a summer 2015 lifeguard, he told Morris that he needed to conclude his employment "before Labor Day Weekend," and more specifically, by "mid-August." (Summer 2015 Decision Action Form.) In addition, another form completed before the allegedly retaliatory conduct explicitly states that Holassie's employment was not expected to extend beyond August 29, 2015. (*See* Notification of Personnel Action.) In response, Holassie does not dispute that the dates listed on or the information contained in the forms is incorrect, he contends only that his return to college hinged on whether he received financial aid and that he was told he was eligible for an extension in previous years when it was likely that he would return to school. (*See* ECF No. 44 ("Pl.'s Opp'n") at 14–15.) Therefore, if a jury believed the undisputed record evidence that Holassie requested a "mid-August" end date, it could reasonably find that DPR was not motivated by a discriminatory reason when it ended his employment in mid-August and did not offer him an extension. *See Varnado v. Save the Children*, No. 18-cv-00752-TNM, 2019 WL 2184821, at *4 (D.D.C. May 21, 2019) ("[I]f a jury believed that [plaintiff] had made these mistakes, then it could reasonably find that [defendant] was not motivated by a discriminatory reason.").

Third, for the same reasons as the second factor, the District's evidence and DPR's stated reasons for terminating Holassie and not offering him an extension are legitimate and facially credible. *Id.*

Fourth, the District has proffered a sufficiently clear and specific explanation that Holassie had "a full and fair opportunity to attack . . . as pretextual." *Figueroa*, 923 F.3d at 1088 (internal quotation marks and citations omitted). The District produced exhibits and testimony demonstrating that, beginning in December 2015, because of Holassie's request, DPR expected Holassie's employment to conclude in mid-August. Therefore, the District has clearly and "fairly put the plaintiff on notice of what reasoning he must challenge." *See id.* at 1091 (citing *Stewart v. Ashcroft*, 352 F.3d 422, 428 (D.C. Cir. 2003)).

> b. *Holassie failed to produce sufficient evidence that the District's proffered reasons are pretextual*

Because the District met all four *Figueroa* factors and proffered legitimate, nondiscriminatory reasons for Holassie's termination, the burden reverts to Holassie to produce sufficient evidence for a jury to reasonably conclude that (1) DPR's assertion that his employment was always contemplated to conclude in "mid-August" was "not the actual reason" for his termination, and (2) DPR intentionally retaliated against him because of his protected activity. *See Brady*, 520 F.3d at 495.

At this stage, "the only question is whether the employee's evidence creates a material dispute on the ultimate issue of retaliation 'either directly by [showing] that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence.'" *Jones v. Bernanke*, 557 F.3d 670, 678 (D.C. Cir. 2009) (quoting *United States Postal Serv. Bd. of Governors v. Aikens*, 460 U.S. 711, 716 (1983)). "Thus, the court reviews each of the three relevant categories of evidence—prima facie, pretext, and any other—to determine whether they either separately or in combination provide sufficient evidence for a reasonable jury to infer retaliation." *Id.* at 679 (internal citations and quotation marks omitted).

In opposing the District's motion for summary judgment, Holassie asks this court to "deny summary judgment because of the close temporal proximity between when Mr. Holassie filed his EEOC complaint and when Defendant terminated him." (Pl.'s Opp'n at 13–14.) He notes that he filed his EEOC complaint on August 5, 2015 and on August 17, 2015, he was notified that he would be terminated on August 23, 2015. (*Id.* at 14.)

To establish a prima facie case, Holassie must show that: "(1) he engaged in a statutorily protected activity, (2) a reasonable employee would have found the challenged action materially adverse, and (3) there existed a causal connection between the protected activity and the materially adverse action." *Lewis v. District of Columbia*, 653 F. Supp. 2d 64, 77 (D.D.C. 2009) (citing *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67–69 (2006)). "[T]o establish the requisite causal nexus between the protected activity and the employer's materially adverse action, [Holassie] must demonstrate by direct or circumstantial evidence that [DPR] had actual knowledge of the protected activity and took adverse action against him because of it." *Sledge v. District of Columbia*, 63 F. Supp. 3d 1, 19 (D.D.C. 2014) (citing *Jones*, 557 F.3d at 670).

Holassie's August 5, 2015 EEOC complaint patently qualifies as protected activity because he "made a charge" alleging unlawful retaliation under Title VII. 42 U.S.C. § 2000e–3(a); *see Holcomb v. Powell*, 433 F.3d 889, 902 (D.C. Cir. 2006) (a plaintiff engages in protected activity by filing a formal complaint of discrimination). However, the District has proffered evidence showing that DPR did not know of Holassie's EEOC complaint until August 28, 2015 (*see* ECF No. 49-2 ("Morris Dep. II") at 100:18–102:23), and Holassie has failed to rebut this fact by presenting evidence—direct or circumstantial—that DPR had actual knowledge of the EEOC complaint between August 5, 2015 (when Holassie filed the complaint) and August 23, 2015 (when Holassie's employment ended without an offer of extension). Therefore, absent any

evidence that DPR had actual knowledge about the protected activity, Holassie cannot continue

to press his retaliation claim arising out of his termination and failure to receive an extension.

*See Coleman v. District of Columbia*, 794 F.3d 49, 64 (D.C. Cir. 2015) (holding that without

evidence the employer had actual knowledge of the protected activity, the plaintiff had "failed to

create a disputed fact question about whether the decision was retaliatory").

### 2. DPR's Failure to Hire Holassie in 2016

The District asserts that DPR did not re-hire Holassie for summer 2016 because his

lifeguard certification—which is a mandatory prerequisite for employment—was expired, and

there were no available positions when he applied. (ECF No. 42-1 ("Def.'s Mot. Summ. J.") at

11–12.) To support its position, the District proffers Holassie's certification form and Morris'

deposition testimony.

Applying the *Figueroa* factors, the court finds that the District failed to articulate a

legitimate, nondiscriminatory reason for its failure to re-hire Holassie.

The first factor is met because Holassie does not contest or object to the admissibility of

any of the District's proffered evidence, and therefore the court may consider the evidence. *Id.*;

*cf. Ali*, 810 F. Supp. 2d at 83 ("Rule 56 allows a party . . . opposing summary judgment to object

that the material cited to support or dispute a fact cannot be presented in a form that would be

admissible in evidence." (citing Fed. R. Civ. P. 56(c)(2)) (internal quotation marks omitted).

However, the second and third factors are not met because the proffered evidence does

not support the proffered nondiscriminatory reasons.

Although the District claims that Holassie was ineligible for re-hire because his lifeguard

certification had expired, its only evidence on that point is Holassie's expired certification. The

District does not identify any policies or procedures governing how an applicant seeking re-hire

is processed when his certification has lapsed. In addition, DPR officials testified that the lack of certification did not preclude them from interviewing candidates, (Morris Dep. I at 42:8–12, 43:13–18, 49:23–25), and Holassie testified that in prior years he had been hired before obtaining re-certification (Holassie Dep. II at 82:21–83:20). Because the District's proffered evidence does not support its proffered non-discriminatory reason, and there is evidence to the contrary, the court cannot accept Holassie's lack of certification as a legitimate, non-discriminatory reason.

In support of its assertion that DPR had completed hiring when Holassie applied, the District points to Morris' testimony that in 2016, DPR had "hit its number" much earlier than it had in the past, and that "[i]t's very possible" that even if Holassie had a valid certification he may have been too late in the process. (ECF No. 42-12 ("Morris Dep. III") at 122:2–23.) Not only does this testimony not support the District's claim that DPR had completed the hiring process, but, as Holassie notes, other portions of Morris' testimony further suggest that DPR does not know whether it had completed hiring in April when Holassie applied. (*See* Morris Dep. I at 46:13–27 ("But I don't recall ever—like once the summer started [after Memorial Day], I don't recall doing any more interviews."); *id.* at 48:9–10 ("So I can't speak with any confidence where we were [with our numbers] in April.").) Here again, because the District's proffered evidence does not support its proffered non-discriminatory reason, and there is contradictory evidence, the court cannot accept the District's representation that hiring had been completed as a legitimate, non-discriminatory reason.

Because the District has failed to proffer a legitimate, non-discriminatory reason for its failure to hire Holassie in April 2016, the court need not proceed past the second prong of the *McDonnell Douglas* analysis to reach its conclusion. *See Figueroa*, 923 F.3d at 1087.

Therefore, the court will deny the District's motion for summary judgment on the Title VII and DCHRA retaliation claim predicated upon DPR's failure to hire Holassie in April 2016.

## B. Title VII Hostile Work Environment Claim

The D.C. Circuit recognizes a "a special type of retaliation claim based on a hostile work environment." *Baird v. Gotbaum*, 792 F.3d 166, 168 (D.C. Cir. 2015) (citation omitted). Such a claim may arise when several individual acts of retaliation that "may not be actionable on their own . . . become actionable due to their cumulative effect." *Id.* (citing *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 115 (2002) (internal quotation marks and alternations omitted)). "The constituent acts must be 'adequately linked' such that they form 'a coherent hostile environment claim.'" *Id.* at 168–69 ("For example, [the acts] might 'involve the same type of employment actions, occur relatively frequently, and [be] perpetrated by the same managers.'"). A plaintiff "'must always prove that the conduct at issue was not merely tinged with offensive . . . connotations, but actually constituted discrimination . . . because of' the employee's protected status." *Peters v. District of Columbia,* 873 F. Supp. 2d 158, 188–89 (D.D.C. 2012) (quoting *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81 (1998)). "It is therefore important in hostile work environment cases to exclude from consideration personnel decisions that lack linkage of correlation to the claimed ground of discrimination." *Id.* (quoting *Lewis*, 653 F. Supp. 2d at 80).

Here, Holassie alleges that he was subjected to a hostile work environment in retaliation for "his mother's protected activity, which resulted in a jury verdict in her favor against the District for claims of sexual harassment in Mr. Holassie's same workplace." (Pl.'s Opp'n at 17–24.) However, he provides no basis upon which this court can find that the 2012 verdict, some three years before the allegedly hostile work environment, was the motivation for DPR's actions

towards him. In his opposition, Holassie states only that "[d]uring the summer of 2015, [] news that [his mother] won a sexual harassment lawsuit against Defendant was publicized." (*Id.* at 18.) In support of this statement, he proffers his interrogatory response, which neither supports the representations made in briefing nor includes any examples of 2015 press coverage of his mother's case. (*See* Pl.'s Resp. to Interrog. No. 5 at 8.) Moreover, the three news articles regarding his mother's jury verdict that Holassie proffered were all published in August 2012. (*See* ECF Nos. 44-3, 44-4, and 44-5.) Ostensibly, the fact that DPR hired Holassie for four consecutive years following his mother's lawsuit, cuts against his argument.

Therefore, because his mother's lawsuit occurred three years before the alleged conduct, and because Holassie has proffered no evidence connecting his mother's case to DPR's actions towards him, Holassie has failed to establish the required causal connection, and the District is therefore entitled to summary judgment on Holassie's retaliatory hostile work environment claim.[3] *See Willingham v. Gonzales*, 391 F. Supp. 2d 52, 61 (D.D.C. 2005) (holding that plaintiff's retaliation claim failed for lack of causal connection because neither six months nor two years was sufficient to demonstrate causation, and noting that the D.C. Circuit "has often followed a three-month rule to establish causation on the basis of temporal proximity alone"); *Gray v. Foxx*, 637 Fed. App'x 603, 608 (D.C. Cir. 2015) (summary judgment granted for employer because being "yelled [at] and belittled" was unconnected to plaintiff's protected status).

---

[3] The court also notes that none of Holassie's allegations, considered in isolation or cumulatively, "show an environment so pervaded with discriminatory abuse as to alter the conditions of plaintiff's employment." *See Williams v. Spencer*, 883 F. Supp. 2d 165, 181 (D.D.C. 2012).

### C. The DCWPA Claim

"Claims brought under the DCWPA are subject to familiar burden-shifting framework established in *McDonnell Douglas*." *Payne v. District of Columbia*, 741 F. Supp. 2d 196, 213 (D.D.C. 2010); *see also Crawford v. District of Columbia,* 891 A.2d 216, 221 (D.C. 2006). A plaintiff must establish a prima facie case by alleging that "(1) he made a protected disclosure; (2) his supervisor took or threatened to take a prohibited personnel action against him; and (3) his protected disclosure was a contributing factor to the prohibited personnel action." *Bowyer v. District of Columbia*, 793 F.3d 49, 52 (D.C. Cir. 2015) (internal quotation marks omitted); *see* D.C. Code § 1-615.53 (2001). Once the plaintiff establishes the protected disclosure was a "contributing factor" to the alleged prohibited personnel action, the burden shifts to the defendant "to prove by clear and convincing evidence that the alleged . . . action would have occurred for legitimate, independent reasons." *Bowyer*, 793 F.3d at 52 (quoting D.C. Code § 1-615.54(b)). "If the defendant shows at summary judgment that there is no genuine issue of disputed fact as to its asserted legitimate, independent reason," the plaintiff must produce "credible evidence showing that the legitimate, independent reason the defendant offered was pretext for an actual, discriminatory motive or did not actually motivate the challenged personnel action." *Bowyer*, 793 F.3d at 52 (quoting *Johnson v. District of Columbia*, 935 A.2d 1113, 1118 (D.C. 2007)).

Holassie claims he made two protected disclosures—(1) when he raised internal complaints to his supervisors and (2) when he filed his EEOC complaint—that resulted in him being terminated (without an extension) and not re-hired the following year. (*See* Pl.'s Opp'n at 25–26.)

## A. Internal Complaints

Holassie's complaints to his supervisors are not protected disclosures because they did not concern a violation of a federal, state, or local law.[4] At the beginning of the summer Holassie asked to switch shifts because he felt uncomfortable. (*See* Pl.'s Resp. to Interrog. No. 4 at 5.) Then, between August 3, 2015 and August 5, 2015, he complained that: (1) he was "targeted by other employees and [] harassed," (Allen/Morris E-mail); (2) "he was being tormented, harassed, and subjected to hostility" (Pl.'s Resp. to Interrog. No. 5 at 10); and (3) "he had been taunted and treated with unwarranted hostility," (*id.*). However, "[n]ot every complaint garners its author protection." *Broderick v. Donaldson*, 437 F.3d 1232, 1232 (D.C. Cir. 2006); *Byrd*, 807 F. Supp. 2d at 73–74 (holding plaintiff's letters to management "both alleging harassment and discrimination in violation of federal and state law—clearly fall under subsection (6)(D)"); *see also Sitar v. Ind. Dep't of Transp.*, 344 F.3d 720, 727–28 (7th Cir. 2003) (stating that complaining about being "picked on," without mentioning discrimination or otherwise indicating that gender was an issue, does not constitute protected activity, even if employee honestly believes she is the subject of sex discrimination); *Walden v. Georgia–Pacific Corp.*, 126

---

[4] "'Protected disclosure' means any disclosure of information, not specifically prohibited by statute, without restriction to time, place, form, motive, context, forum, or prior disclosure made to any person by an employee or applicant, including a disclosure made in the ordinary course of an employee's duties by an employee to a supervisor or a public body that the employee reasonably believes evidences:
    (A) Gross mismanagement;
    (B) Gross misuse or waste of public resources or funds;
    (C) Abuse of authority in connection with the administration of a public program or the execution of a public contract;
    (D) A violation of a federal, state, or local law, rule, or regulation, or of a term of a contract between the District government and a District government contractor which is not of a merely technical or minimal nature; or
    (E) A substantial and specific danger to the public health and safety."
D.C. Code § 1-615.52. The court assesses whether the internal complaints concerned the conduct in subsection D because none of the other subsections are implicated.

F.3d 506, 512 n.4 (3d Cir. 1997) (general grievance about working conditions and questioning

job security not protected where it did not contain any reference to conduct protected by Title

VII); *Barber v. CSX Distribution Servs.*, 68 F.3d 694, 701 (3d Cir. 1995) (letter complaining

about failure to be promoted, but without mention of discrimination, is not protected activity

because a "general complaint of unfair treatment does not translate into a charge of illegal []

discrimination").  And although internal complaints need not specifically reference a statute, they

must "in some way allege unlawful discrimination" and not merely complain of management

decisions with which plaintiff disagrees.  *Broderick*, 437 F.3d at 1232 ("While no 'magic words'

are required, the complaint must in some way allege unlawful discrimination, not just frustrated

ambition.").  Because Holassie's internal complaints to DPR management do not allege or refer

to a violation of a federal, state, or local law, and the facts do not suggest that Holassie

"reasonably believed" his complaints "evidenced" a violation of law,[5] the internal complaints do

not qualify as protected disclosures.

### B.  EEOC Complaint

As discussed above Section III.A.1.b *supra*, Holassie's EEOC complaint is a protected

disclosure.  In addition, DPR's termination of, and failure to hire Holassie qualifies as a

prohibited personnel action.  *See* D.C. Code § 1-615.52 ("'Prohibited personnel action' includes

but is not limited to: . . . actual termination, . . . failure to promote or hire or take other favorable

personnel action.").  Therefore, the court must determine whether Holassie has adduced evidence

showing that his EEOC complaint was a "contributing factor" in DPR's decision to terminate

him and/or failure to hire him.  The DCWPA defines a "contributing factor" as "any factor

---

[5] In light of Holassie's EEOC complaint filed around the same time, it is not reasonable to
believe that his vague, general complaints conveyed a violation of a federal, state, or local law;
the internal complaints merely conveyed his frustration with what he perceived to be unfair
treatment.

which, alone or in connection with other factors, tends to affect in any way the outcome of the [employment] decision." D.C. Code § 1–615.52(a)(2). If Holassie meets this burden, the District must proffer clear and convincing evidence that the action(s) would have occurred for a legitimate, independent reason.

As an initial matter, as discussed in Part III.A.1.b *supra*, Holassie has not adduced any evidence that DPR knew about his EEOC complaint at the time it terminated him and decided not to offer him an extension. Therefore, in the absence of any actual knowledge, the District is entitled to summary judgment on the issue of whether the EEOC complaint was a contributing factor in Holassie's termination. *See Coleman*, 794 F.3d at 64 ("Without evidence, circumstantial or otherwise, that 'the decision-maker[] responsible for the adverse action had actual knowledge of the protected activity,' [a plaintiff] has failed to create a disputed fact question about whether the decision was retaliatory.") (quoting *McFarland v. George Washington Univ.*, 935 A.2d 337, 357 (D.C. 2007)); *Barber v. D.C. Gov't*, No. 17-cv-620-KBJ, 2019 WL 3804285, at *6 (D.D.C. Aug. 13, 2019) (dismissing DCWPA claim where plaintiff failed to allege that defendants were aware of her protected disclosure).

Conversely, with respect to DPR's failure to re-hire Holassie, his EEOC complaint qualifies as a protected disclosure because, at the time DPR decided not to hire him, it was aware of his EEOC complaint. In arguing for summary judgment on this portion of Holassie's whistleblower claim, the District contends that "the undisputed record evidence establishes that Plaintiff did not have the requisite certification for hire in 2016, and applied at a time when recertification classes had already been held and the agency was already full with lifeguards." (ECF No. 49 ("Def.'s Reply") at 10.) In support of these contentions, the District directs the court to Morris' deposition testimony:

Q: So for 2016, by March you felt like you had nearly sufficient guards?

A: Yeah, because we had a lot of college kids that we—we had a recertification class during spring break time. We did one during winter break and spring break. And it was a strategy. You know, that's when a lot of our staff had returned home and it was easy. So by then we were great.

(ECF No. 49-2 ("Morris Dep. IV") at 45:14–21.) While it is undisputed that Holassie's certification had lapsed, as discussed in Part III.A.2 *supra*, there is no record evidence either that a certification was required for hire or that DPR had completed its hiring. Moreover, Morris' testimony does not support the District's assertion that "recertification classes had already been held and the agency was already full with lifeguards." First, Morris stated that DPR held "a" recertification class during spring break; and there is no evidence that the class was the last or only one before the summer lifeguards were scheduled to begin work. Second, Morris testified that by March he had "nearly sufficient" guards, not that he had completed hiring. Accordingly, the District is not entitled to summary judgment on Holassie's DCWPA claim on this theory.

## VI.    CONCLUSION

For the foregoing reasons, the District's motion for summary judgment will be GRANTED, in part, and DENIED, in part. The motion will be denied with respect to Holassie's Title VII, DCHRA, and DCWPA claims predicated upon DPR's failure to re-hire Holassie in 2016, and granted in all other respects.

A corresponding Order will issue separately.


Date:  October 15, 2019


*Tanya S. Chutkan*
TANYA S. CHUTKAN
United States District Judge