# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

RONALD HOLASSIE,                      )
                                      )
        Plaintiff,                    )
                                      )
v.                                    )        Civil Action No. 16-cv-2053 (TSC)
                                      )
DISTRICT OF COLUMBIA,                 )
                                      )
        Defendant.                    )
                                      )

## AMENDED MEMORANDUM OPINION[1]

Plaintiff Ronald Holassie, a former lifeguard with the District of Columbia Department of Parks and Recreation ("DPR"), has sued the District of Columbia, alleging that it discriminated against him, retaliated against him and created a hostile work environment in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et seq.* ("Title VII") and the D.C. Human Rights Act, as amended, D.C. Code §§ 2–1401.01 *et seq.* ("DCHRA") (Count I), and retaliated against him in violation of the D.C. Whistleblower Protection Act ("WPA"), D.C. Code §§ 1–615.51 *et seq.* (Count II). Holassie also brings an invasion of privacy claim. (Count III).

DPR moves, pursuant to Federal Rule of Civil Procedure 56, for summary judgment. ECF No. 42. For the reasons set forth below, the court will GRANT the motion, in part, and DENY the motion, in part. [2]

---

[1] This Amended Memorandum Opinion replaces the court's October 15, 2019, opinion. *See* ECF No. 57. An accompanying Order will replace the October 15, 2019 Amended Order. *See* ECF No. 58.

[2] Holassie opposes summary judgment only as to his Title VII, DCHRA, and WPA claims; he does not address the District's motion as to his invasion of privacy claim. Therefore, the court treats the District's argument as to the invasion of privacy claim as conceded. *See Hopkins v.*

## I.  BACKGROUND

In May 2006, Carmen Jean-Baptiste, Holassie's mother, began working as a lifeguard at DPR's Takoma Aquatic Center.  *Byrd v. Dist. of Columbia*, 807 F. Supp. 2d 37, 52 (D.D.C. 2011).  In 2007, Jean-Baptiste sued the District of Columbia, claiming that, during her employment, she experienced sexual harassment, a hostile work environment, and was wrongfully and retaliatorily terminated.  *Jean-Baptiste v. Dist. of Columbia*, 11-cv-1587-RCL, ECF No. 51.  In 2012, a jury awarded Jean-Baptiste $3.5 million and returned an addendum recommending that DPR "begin an EEO training program for all DPR managers," revise its policies regarding the handling of complaints, and conduct an internal audit of compliance with DPR policies.  *Id.*, ECF No. 185.  Jean-Baptiste ultimately settled her lawsuit, and the case was dismissed in January 2014.  *Id.*, ECF Nos. 254–55.

### A.  <u>Holassie's Employment with DPR</u>

In 2012, two years before the settlement in his mother's case, Holassie began working for DPR as a summer lifeguard at Wilson Aquatic Center.  ECF No. 44, Pls. Ex. M, Resp. to Interrog. No. 5.  He then worked at Takoma Aquatic Center as a summer lifeguard in 2013 and 2014.  *Id.*  According to Holassie, between 2012 and 2014 (the year his mother settled her lawsuit), he had no "significant" negative interactions with supervisors or co-workers, negative performance reviews, or mediation meetings with management.  *Id.*

---

*Women's Div., Gen. Bd. of Glob. Ministries*, 284 F. Supp. 2d 15, 25 (D.D.C. 2003) ("It is well understood in this Circuit that when a plaintiff files an opposition to a dispositive motion and addresses only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded.") (citing *FDIC v. Bender*, 127 F.3d 58, 67–68 (D.C. Cir. 1997)); *see also Hajjar–Nejad v. George Washington Univ.*, 37 F. Supp. 3d 90, 128 (D.D.C. 2014) ("[A] Plaintiff is not entitled to rely on the allegations in h[er] Complaint to create a genuine issue of material fact at the summary judgment stage.") (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).

Holassie alleges that in the summer of 2015, in retaliation for his mother's lawsuit, DPR began discriminating against him and creating a hostile work environment.  ECF No. 19, Am. Compl. ¶ 13; Pls. Resp. to Defs. SOF ¶¶ 1–3; Pls. Ex. M, Pls. Resp. to Interrog. No. 5.  Holassie claims that DPR subjected him to "numerous hostile meetings," supervisors yelled at him, and supervisors and co-workers harassed him.  Pls. Ex. L, Pls. Resp. to Interrog. No. 4 at 4–5; Am. Compl. ¶ 30.  He further alleges that:

- On June 9, 2015, he was selected for three lifeguard skills performance audits.  Pls. Ex. L, Pls. Resp. to Interrog. No. 4 at 5; Am. Compl. ¶¶ 15, 18.  He contends that he was not allowed to rest or eat the day of the audits, and was videotaped without his consent.  Pls. Ex. L, Pls. Resp. to Interrog. No. 4 at 5; Am. Compl. ¶¶ 15, 18.  It is undisputed, however, that all lifeguards were subjected to random performance audits by a third-party vendor and that a videotape of one of Holassie's audits was viewed only by the auditor and DPR's aquatic leadership team.  Pls. Resp. to Defs. SOF ¶¶ 14–15, 21.  Holassie does not explain what, if any, impact the audit had on his job.

- Although he disputes the cause of the incident, on July 10, 2015, Holassie, his brother, and another lifeguard were involved in a "physical skirmish," during which Holassie tipped over a trash can and used profanity.  *Id.* ¶¶ 5–6.  On July 14, 2015, Holassie's supervisor, Robert Allen, met with Holassie to discuss the incident.  *Id.* ¶ 7.  Holassie alleges that the incident was precipitated by an employee bullying his brother.  *Id.* ¶ 6.

- On July 21, 2015, Holassie's supervisor met with Holassie after he left his assigned zone to secure his whistle.  *Id.* ¶¶ 8–9.  The parties dispute whether Holassie secured coverage before leaving his post.  *Id.* ¶¶ 9–10.

- On August 3, 2015, DPR held a meeting regarding Holassie's alleged failure to adhere to the employment schedule several days earlier.  *Id.* ¶¶ 11–12.  Holassie maintains that he was on time for his assigned shift.  *Id.*  At the meeting, Holassie informed DPR that he felt targeted by other employees.  Pls. Ex. M, Pls. Resp. to Interrog. No. 5 at 9.

  Holassie's supervisor Allen subsequently emailed Tyrell Lashley,[3] DPR's Director of Aquatics, stating: "Ronald Holassie has expressed to me that he feels as if he has been targeted by other employees and is being harassed.  What would be the official DPR procedure [sic] course of action to take?"  Pls. Ex. E.

- On August 4, 2015, Morris responded that he planned to meet with Holassie later that day, and Allen memorialized the substance of Holassie's complaints in an email to

---

[3]  Lashley has since married and changed his last name to Morris.  *Id.*  Going forward, the court will refer to Lashley as Morris.

Morris and DPR's Aquatic Operations Manager.  Pls. Ex. E.  Holassie disputes the accuracy of the email.  Pls. Resp. to Defs SOF ¶¶ 4–6.  At some point that day, Holassie rescheduled the meeting to the following day because he was not feeling well due to the alleged "harassment" and "hostility" he was experiencing.  Pls. Ex. M, Pls. Resp. to Interrog. No. 5 at 10.

- The following morning, August 5, 2015, Holassie filed an EEOC complaint against DPR and later that afternoon met with Morris and other DPR management employees.  *Id.* According to Holassie, he explained during the meeting that he had been "taunted and treated with unwarranted hostility by his supervisors and staff."  *Id.*  Morris then read Allen's email listing Holassie's alleged incidents and complaints and stated that, effective immediately, Holassie would be transferred to the Rumsey Aquatic Center.  *Id.* at 10–11. Holassie alleges that the transfer was retaliatory, but he agreed to the transfer because he wanted to continue working for DPR.  *Id.*

**B.  Holassie's 2015 Alleged Unlawful Termination**

More than one week later, on August 17, 2015, Holassie learned that his last day at DPR would be August 23, 2015.  Pls. Ex. N, Pls. Resp. to Interrog. No. 6 at 15.  He e-mailed Morris to confirm, and Morris responded: "It is my understanding that this is the date you provided to staff as you were leaving to go back to school."  Pls. Ex. H.  Holassie contends that DPR prematurely terminated his employment.

**C.  Holassie's 2016 Application for Employment**

On April 24, 2016, Holassie applied to work as a summer 2016 DPR lifeguard.  Pls. Ex. K.  He did not receive an offer and never returned to work for DPR.

## II. LEGAL STANDARD

Summary judgment is appropriate where there is no disputed genuine issue of material fact, and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  A dispute is "genuine" only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A fact is "material" only if it could affect the outcome of the litigation.  *Id.*  In determining whether a genuine issue of material fact exists, the court must

view all facts in the light most favorable to the nonmoving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). At the summary judgment stage, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Anderson*, 477 U.S. at 255.

The moving party bears the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits . . . which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp.*, 477 U.S. at 323 (cleaned up); *see also* Fed. R. Civ. P. 56(c). The non-moving party's opposition, however, must consist of more than mere unsupported allegations or denials, and must be supported by affidavits, declarations, or other competent evidence, setting forth specific facts showing that there is a genuine issue for trial. *See* Fed. R. Civ. P. 56(e); *Celotex Corp.*, 477 U.S. at 324. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249–50 (citations omitted).

## III. ANALYSIS

### A. Title VII and DCHRA Retaliation Claims[4]

---

[4] In his Amended Complaint, Holassie alleges that he was "discriminated <u>and</u> retaliated against and forced to work in a hostile work environment." Am. Compl. ¶ 32 (emphasis added). Likewise, in his response to DPR's Motion for Summary Judgment, Holassie alleges discrimination and retaliation. Pls. Resp. at 12. Any independent disparate treatment discrimination claims are not actionable, however, because Holassie did not exhaust his administrative remedies. *Park v. Howard Univ.*, 71 F.3d 904, 907 (D.C. Cir. 1995) (citation omitted) ("A Title VII lawsuit following the EEOC charge is limited in scope to claims that are 'like or reasonably related to the allegations of the charge and growing out of such allegations.'"). Holassie "checked the box" for "retaliation" on his EEOC charge form. ECF No. 19-2, Ex. 2. He did not check any other boxes on the form. Moreover, he explained in the EEOC charge that "[e]ver since" his mother's case was settled and publicized, he began to experience alleged retaliation. *Id.* Accordingly, the court will dismiss any independent disparate treatment discrimination claims with prejudice.

"Title VII of the Civil Rights Act makes it unlawful for an employer to 'fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin.'" *Brady v. Off. of Sergeant at Arms*, 520 F.3d 490, 493 (D.C. Cir. 2008) (quoting 42 U.S.C. § 2000e–2(a)(1)).  The statute also prohibits employers from retaliating against an individual who "opposed any practice" made unlawful by Title VII or "made a charge, testified, assisted, or participated in" a Title VII proceeding or investigation.  42 U.S.C. § 2000e–3(a).  Retaliation based on a family member's opposition to a discriminatory practice is actionable.  *Thompson v. N. Am. Stainless, LP*, 562 U.S. 170, 170 (2011).

The DCHRA likewise prohibits discriminatory and retaliatory practices by employers.  D.C. Code § 2-1402.61.  "DCHRA and Title VII employment discrimination actions are evaluated under the same legal standard."  *Byrd*, 807 F. Supp. 2d at 58.

"Where a plaintiff attempts to prove unlawful retaliation in violation of Title VII using circumstantial evidence of motive, the burden-shifting framework of *McDonnell Douglas* ordinarily applies."  *Burton v. Donovan*, 210 F. Supp. 3d 203, 212 (D.D.C. 2016) (citations omitted).  To establish a prima facie case of retaliation, a plaintiff must present evidence that (1) they engaged in activity protected by Title VII, (2) the employer took an adverse employment

---

Likewise, Holassie failed to exhaust his administrative remedies on his hostile work environment claims.  "A Title VII lawsuit following the EEOC charge is limited in scope to claims that are 'like or reasonably related to the allegations of the charge and growing out of such allegations.'  At a minimum, the Title VII claims must arise from 'the administrative investigation that can reasonably be expected to follow the charge of discrimination.'"  *Park*, 71 F.3d at 907 (citations omitted).  Nothing in Holassie's EEOC charge indicates that he intended to bring a hostile work environment claim, nor could such a claim have reasonably arisen from the administrative investigation.

action against them, and (3) the adverse action was causally related to the exercise of their rights. *Holcomb v. Powell*, 433 F.3d 889, 901–02 (D.C. Cir. 2006).

If a plaintiff establishes a prima facie case, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for its actions. *Id.* at 901 (citation omitted). If the employer proffers such a reason, the burden reverts to the plaintiff to prove that the legitimate reason provided by the employer was in fact pretext for discrimination. *Id.* This burden is one of production, not persuasion: it "can involve no credibility assessment." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 509 (1993). Instead, the court "must resolve one central question: Has the employee produced sufficient evidence for a reasonable jury to find that the employer's asserted non-discriminatory reason was not the actual reason and that the employer intentionally discriminated against the employee on the basis of race, color, religion, sex, or national origin?" *Brady*, 520 F.3d at 494.

1.  Incidents During Holassie's Employment

Holassie has not established a causal connection between his mother's protected activity and the events that occurred prior to his 2015 termination. Holassie's mother won her jury trial in 2012 and settled her lawsuit with DPR in January 2014. *Jean-Baptiste*, 11-cv-1587-RCL, ECF Nos. 254–55. The following summer, less than six months after the settlement, Holassie worked for DPR, without incident. Pls. Ex. M, Resp. to Interrog. No. 5 at 7–8. It was not until one year later, in the summer of 2015, that DPR employees allegedly began to retaliate against him. *Id.* at 8.

Attempting to establish causation, Holassie states that "[d]uring the summer of 2015, [] news that [his mother] won a sexual harassment lawsuit against Defendant was publicized." Pls. Resp. at 1. But his supporting exhibits contain copies of two articles published in August 2012, Pls. Exs. A, C, and one undated article that also appears to have been published in 2012, at the

time of the jury award.  Pls. Ex. B ("Carmen Jean-Baptists is relieved the six-year battle is over.
Today, a federal jury awarded her $3.5 million in a sexual harassment lawsuit."); *see Jean-
Baptiste*, 11-cv-1587-RCL, ECF No. 185.  Thus, Holassie has not established proximity between
his mother's protected activity and the incidents that occurred during his employment.

While a large gap between protected activity and retaliation is not necessarily fatal to a
retaliation claim, Holassie must point to other factors leading to an inference of causation.  *See
Greer v. Bd. of Trs. of Univ. of D.C.*, 113 F. Supp. 3d 297, 311 (D.D.C. 2015) (citing *Buggs v.
Powell,* 293 F. Supp. 2d 135, 149 (D.D.C. 2003)).  He has not done so and therefore the court
will grant summary judgment to DPR on all claims associated with conduct that occurred before
his alleged unlawful termination in August 2015.

2. DPR's Alleged Unlawful Termination of Holassie in 2015

Holassie engaged in protected activity, by filing an EEOC charge, a few days before his
allegedly unlawful termination on August 23, 2015.  Despite the proximity between his protected
activity and his termination, Holassie's termination claim fails because DPR proffered a
legitimate non-discriminatory reason for the termination, and Holassie has not proffered
evidence of pretext.  It is undisputed that in December 2014, when DPR hired Holassie for the
2015 summer season, he completed a personnel form on which he was asked whether he needed
to "end [his] employment before Labor Day Weekend (September 7th)," to which he responded
yes and requested a "mid-August" end date.  Defs. Ex. G.  Similarly, Holassie's May 29, 2015
personnel action form states that his appointment was "not to exceed 8/29/2015."  Defs. Ex. F.

Despite these unambiguous records, Holassie contends that his employment was
scheduled to extend past August.  He asserts that "there is no record evidence that [he] knew he
would return to school or would have refused an extension."  Pls. Br. at 14.  He supports this
argument by citing to his testimony that he ultimately attended school in fall 2015, but did not

know in May or June whether his financial aid would be approved.  Pls. Ex. Q, Holassie Tr. at
11–12, 36.

Once again, Holassie has not proffered evidence of pretext.  The testimony he cites does

This testimony does not create a genuine issue of material fact regarding what DPR knew
about any potential changes in Holassie's scheduled departure date.  Rather, it simply establishes
that Holassie viewed his return to school in the fall as uncertain, but not that DPR was aware of
this uncertainty.

Holassie next attempts to establish pretext by citing his deposition testimony that DPR
had previously offered to extend his employment, even when DPR knew he was scheduled to
return to school in the fall.  Pls. Br. 15; Pls. Ex. Q, Holassie Tr. at 102–04.  Holassie further cites
to deposition testimony by two DPR employees as evidence that "seasonal lifeguarded terms
were not fixed and offers for extension were common so long as the guard was in good
standing."  Pls. Resp. 15; Pls. Ex. O, Washington Tr. at 24–25, 27–28; Pls. Ex. T, Morris Tr. at
103.

Once again, Holassie has not proffered evidence of pretext.  The testimony he cites does
not stand for the proposition he champions; rather, it establishes that employees "may work past
the Labor Day holiday," if the pool season is extended, or there is a "shortage of personnel."  Pls.
Ex. O, Washington Tr. at 24–25; ECF No. 49, Pls. Ex. T, Morris Tr. at 103–04.  Otherwise,
according to Morris, seasonal employees have a "not to exceed date," after which "the system
will shut off" and he could no longer pay employees.  Pls. Ex. T, Morris Tr. at 103–04.

Morris testified that in order to extend seasonal employees, he had to initiate a formal HR
process articulating why he wanted to extend a lifeguard's employment: "I can't just say send
them because I want to.  No.  We have a public safety need or the government's having a service
or program that we need these individuals."  *Id.* at 104.  When asked how DPR determined
which employees were offered extensions, he testified it depended on who was available "if you

were in school—if you were a student in high school, you went back to school.  If you were in college, you went back to college."  *Id*.

This testimony does not establish evidence of pretext.  Holassie does not provide evidence that DPR extended the pool season in 2015.  Nor does he show that DPR's procedures for offering extensions in 2015 were unusual or even that DPR allowed other lifeguards to continue working past their "not to exceed" dates.  Accordingly, Holassie has not come forward with evidence that DPR's reason for terminating his employment in August was a pretext for retaliation.  Therefore, the court will grant DPR summary judgment on the termination claim.

### 3.  DPR's Failure to Rehire Holassie in 2016

As previously discussed, a significant time period between protected activity and alleged retaliation is not necessarily fatal to a retaliation claim, but to survive summary judgment a plaintiff must point to other factors leading to an inference of discrimination.  *See Greer*, 113 F. Supp. 3d at 311 (citation omitted).  Holassie has pointed to such evidence with respect to DPR's failure to rehire him in 2016.

DPR claims that it did not re-hire Holassie for summer 2016 because his lifeguard certification—which is a prerequisite for employment—had expired, and there were no available positions when he applied.  Defs. Br. at 11–12.  But DPR relies solely on Holassie's expired certification, without identifying any hiring policies or procedures governing expired certifications.  *See* Defs. Ex. H.  And DPR officials testified that candidates' lack of certification did not preclude them from getting an interview.  Pls. Ex. T, Morris Tr. at 42–43.  Indeed, DPR sometimes conducted job fairs where it interviewed non-certified applicants and then "enroll[ed] them in the certification," *id*. at 42–43, and Holassie testified that in prior years he had been hired before obtaining re-certification.  Pls. Ex. Q, Holassie Tr. at 82–83.

In support of its assertion that it had completed hiring when Holassie applied, DPR points to Morris' testimony that in 2016 DPR had "hit its number" much earlier than it had in the past, and that "[i]t's very possible" that even if Holassie had a valid certification he may have been too late in the process.  Defs. Reply, Ex. I, Morris Tr. at 122.  But this testimony does not establish that DPR had completed the hiring process.  And, as Holassie notes, other portions of Morris' testimony suggest that he did not know whether DPR had completed hiring in April, when Holassie applied.  *See* Pls. Ex. T, Morris Tr. at 46 ("But I don't recall ever—like once the summer started [after Memorial Day], I don't recall doing any more interviews."); *id*. at 48 ("So I can't speak with any confidence where we were [with our numbers] in April."); *id*. at 44 (Q: "Do you remember about when you hit that quota, then, for opening weekend in 2016?"; A: "When?"; Q: "Yeah.  Do you know if it was like March or May?"; A: "No.").

Because Holassie has proffered evidence that he engaged in protected activity and DPR's proffered reason for subsequently failing to rehire him may have been pretextual, the court will deny DPR's motion for summary judgment on Holassie's Title VII and DCHRA failure to rehire retaliation claims.

## B.  WPA Claim

"[C]laims brought under the DCWPA are subject to [the] familiar burden-shifting framework established in *McDonnell Douglas*."  *Payne v. Dist. of Columbia*, 741 F. Supp. 2d 196, 213 (D.D.C. 2010) (citing *Crawford v. Dist. of Columbia,* 891 A.2d 216, 221 (D.C. 2006)).  A plaintiff must establish a prima facie case by alleging that "(1) he made a 'protected disclosure'; (2) his supervisor took or threatened to take a 'prohibited personnel action' against him; and (3) the protected disclosure was a 'contributing factor' to the prohibited personnel action."  *Bowyer v. Dist. of Columbia*, 793 F.3d 49, 52 (D.C. Cir. 2015) (internal quotation marks omitted) (citing D.C. Code §§ 1–615.53(a), 1–615.54(b)) (citations omitted).  Once the

plaintiff establishes a "prima facie case by a preponderance of the evidence, the burden shifts to the defendant 'to prove by clear and convincing evidence that the alleged prohibited personnel action would have occurred for legitimate, independent reasons even if the employee had not' made the protected disclosure." *Bowyer*, 793 F.3d at 52 (alterations omitted) (quoting D.C. Code § 1–615.54(b); *Johnson v. Dist. of Columbia*, 935 A.2d 1113, 1118 (D.C. 2007)).   "If the defendant shows at summary judgment that there is no genuine issue of disputed fact as to its asserted legitimate, independent reason," the plaintiff must come forward with "contrary admissible evidence that a jury might credit" establishing that "the legitimate, independent reason the defendant offered was pretext for an actual, discriminatory motive or did not actually motivate the challenged personnel action." *Bowyer*, 793 F.3d at 52 (quoting *Johnson*, 935 A.2d at 1118 n.2).   To impose liability at trial, the "jury must find 'but for' causation . . . ." *Wilburn v. Dist. of Columbia,* 957 A.2d 921, 922 n.3 (D.C. 2008) (citing *Johnson,* 935 A.2d at 1113).   Holassie claims he made two types of disclosures—(1) internal complaints to his supervisors, and (2) his EEOC complaint.   *See* Pls. Resp. at 25–26.

Although the parties address the application of the WPA to all of DPR's alleged retaliatory conduct, in his Amended Complaint Holassie alleges only that his transfer to the Rumsey Aquatic Center was retaliatory under the WPA:

> **COUNT II: Violation of the D.C. Whistleblower Act, D.C. Code §§ 1-615.51 *et seq*.**
>
> 34.   Plaintiff incorporates by reference paragraphs 1-28 above.
>
> 35.   As described herein, Plaintiff's supervisors and managers, each of whom was an employee of DPR, threatened to transfer Plaintiff in response to Plaintiff's complaints about the harassing, discriminatory, unfair and retaliatory conduct to which he was subjected while working for DPR.
>
> 36.   This conduct by DPR's employees violated D.C. Whistleblower Act, D.C. Code §§ 1-615.51 *et seq*.

Am. Compl. ¶¶ 34–36.  Accordingly, the court will only address the WPA claim as it relates to the transfer.

1.   Internal Complaints

Prior to his transfer, Holassie had not yet filed his EEOC charge; all his complaints were internal.  Holassie alleges that he complained to DPR (1) about switching shifts because he felt "uncomfortable," (2) that he was "targeted by other employees and [] harassed," (3) that "he was being tormented, harassed, and subjected to hostility," and (4) that "he had been taunted and treated with unwarranted hostility."  *See* Pls. Ex. L, Pls. Resp. to Interrog. No. 4 at 5; Pls. Ex. M, Pls. Resp. to Interrog. No. 5 at 10.

Holassie argues that his complaints were "protected disclosures" for purposes of the WPA, but relies solely on cases involving Title VII, not the WPA.  *See* Pls. Resp. 24–26.  To establish retaliation under Title VII, a plaintiff must show that their actions constituted "protected activity."  *See* 42 U.S.C. § 2000e–3(a) (making it unlawful under Title VII to retaliate against an applicant or employee "because he has opposed any practice made an unlawful employment practice by [Title VII], or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing" relating to a Title VII charge); *Howard R.L. Cook & Tommy Shaw Found. ex rel. Black Emps. of Libr. of Cong., Inc. v. Billington*, 737 F.3d 767, 772 (D.C. Cir. 2013) (noting that the retaliation provision in 42 U.S.C. § 2000e–3(a) "protects employees who file discrimination charges (or engage in other statutorily protected activity) from materially adverse retaliation by their employers.") (citing *Burlington N. & Santa Fe Ry. Co. v. White,* 548 U.S. 53 (2006)).  In contrast, the WPA requires that a plaintiff have made a "protected disclosure," which is defined as

(A)   Gross mismanagement;

(B)   Gross misuse or waste of public resources or funds;

(C)     Abuse of authority in connection with the administration of a public program or the execution of a public contract;

(D)     A violation of a federal, state, or local law, rule, or regulation, or of a term of a contract between the District government and a District government contractor which is not of a merely technical or minimal nature; or

(E)     A substantial and specific danger to the public health and safety.

*Williams v. Johnson,* 776 F.3d 865, 870 (D.C. Cir. 2015) (quoting D.C. Code § 1–615.52(a)(6)).

Holassie's generalized complaints of "harassment," "torment," and "hostility"—containing no mention of alleged discrimination—do not meet the WPA definition of a "protected disclosure."  In some instances, such as here, "a workplace complaint is just a workplace complaint.'"  *Coleman v. Dist. Of Columbia*, 794 F.3d 49, 53 (citing *Wilburn v. Dist. of Columbia,* 957 A.2d 921, 925 (D.C. 2008); *Williams*, 776 F.3d at 870).  Holassie did not, as the WPA requires, allege "'objectively serious' governmental act[s] of gross mismanagement, gross misuse or waste of public funds, abuse of authority, a material violation of local or federal law, or a substantial and specific danger to public health and safety."  *Coleman*, 794 F.3d at 58 (citing *Williams,* 776 F.3d at 871–72).  Accordingly, the court finds that Holassie's internal complaints did not constitute "protected disclosures" under the WPA.

2.   EEOC Charge

Holassie filed his EEOC charge on August 5, 2015 and, later that day, met with Morris, who informed him that DPR was transferring him to the Rumsey Aquatic Center.  Pls. Ex. M, Pls. Resp. to Interrog. No. 5 at 11.  Holassie claims that the transfer was retaliatory, but that he agreed to it because he wanted to continue working for DPR.  *Id.*  Despite the proximity between the filing of the EEOC charge and the transfer, Holassie has not established a prima facie case for retaliation under the WPA.

While a "prohibited personnel action" can include a "threatened, or actual . . . involuntary transfer, reassignment, or detail," D.C. Code § 1–615.52(a)(5)(A), Holassie has not produced evidence that the transfer constituted an adverse employment action.  In evaluating alleged retaliatory conduct, "the standard is objective but context-specific."  *Mentzer v. Lanier*, 677 F. Supp. 2d 242, 251 (D.D.C.), *aff'd,* 408 F. App'x 379 (D.C. Cir. 2010) (citing *Burlington N.*, 548 U.S. at 68–69 (2006)).  A transfer or schedule change "may make little difference to many workers, but may matter enormously to a [parent] with school-age children."  *Mentzer*, 677 F. Supp. 2d at 251–52 (quoting *Burlington N.*, 548 U.S. at 69).  "To be actionable, the challenged conduct must be materially adverse, producing significant, nontrivial harm to the employee" such that they would be dissuaded from making a charge of discrimination.  *Mentzer*, 677 F. Supp. 2d at 252 (quoting *Burlington N.*, 548 U.S. at 67–68).

Holassie has not met this standard.  He has provided no details about the transfer: whether the commute, working conditions or schedule were materially more difficult, or whether his pay diminished.  As such, Holassie has not "produced enough evidence to permit a reasonable juror to conclude that [the transfer] may have dissuaded a reasonable worker from making or supporting a charge of discrimination."  *See Mentzer*, 677 F. Supp. 2d at 252; *Williams v. Dist. Of Columbia*, 825 F. Supp. 2d 88, 98–101 (D.D.C. 2011) (rejecting Plaintiff's argument that "any employment action whatsoever" can support a WPA claim and finding that WPA claims incorporate "a 'materiality' requirement akin to the one in federal employment discrimination law").

Even if he had established that the transfer constituted an adverse employment action, Holassie has not proffered evidence that Morris knew that Holassie had filed an EEOC charge just hours before their meeting.  *See* Pls. Counter SOF ¶¶ 88, 90, 93.  Morris testified that he did not learn of Holassie's EEOC charge until "very close to the end of August," Defs. Reply, Ex. B,

15

Morris Tr. at 100–02, and there is no evidence contradicting this testimony.  Absent evidence that Morris knew about the EEOC charge, Holassie cannot continue to press his WPA claim arising out of his transfer.  *See Coleman*, 794 F.3d at 64 ("Without evidence, circumstantial or otherwise, that the decision-maker responsible for the adverse action had actual knowledge of the [complaint], Coleman has failed to create a disputed fact question about whether the decision was retaliatory.") (cleaned up).

## VI.    CONCLUSION

For the foregoing reasons, the court will GRANT in part, and DENY in part, DPR's motion for summary judgment.  The motion will be denied with respect to Holassie's Title VII and DCHRA retaliation claims predicated upon DPR's failure to re-hire Holassie in 2016.  In all other respects the motion will be granted.

The court will also dismiss with prejudice Plaintiff's hostile work environment claim and any disparate treatment claims.

Date:  February 1, 2022

*Tanya S. Chutkan*
TANYA S. CHUTKAN
United States District Judge